UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Mack Miller,

        Plaintiff

v.

Clark County, et al.,

        Defendants

Case No. 2:23-cv-00070-CDS-DJA

**Order Granting in Part the Defendant's Motion for Summary Judgment and Granting the Defendants' Partial Summary Judgment**

[ECF Nos. 61, 64]

Plaintiff Mack Miller brings this § 1983 suit against defendant Clark County and Preventative Measures Security Firm LLC, alleging personal injury arising out of a Clark County Board of County Commissioners meeting where two security guards physically removed Miller from the meeting (the "incident"). *See* Compl., ECF No. 2-2. On January 12, 2023, Preventive Measures removed this action from the Eighth Judicial District Court. *See* Pet., ECF No. 2. Thereafter, Miller amended his complaint, adding defendants Marco Solorio and Leonard Morris. Am. compl., ECF No. 17.

On July 30, 2025, Clark County filed a motion for summary judgment. *See* Mot. for summ. j., ECF No. 61. This motion is fully briefed. *See* Resp., ECF No. 70; Reply, ECF No. 71. That same day, Preventive Measures, Solorio, and Morris ("the defendants") filed a motion for partial summary judgment. *See* Mot. for partial summ. j., ECF Nos. 64, 65. This motion is also fully briefed. *See* Resp., ECF No. 69; Reply, ECF No. 72. For the reasons stated herein, I grant Clark County's motion for summary judgment and the defendants' partial summary judgment motion.

I.      Background[1] and undisputed facts

     A.  Summary of the events

     On September 21, 2021, Miller attended a Clark County Board of Commissioners meeting held at the Government Center's Commission Chambers to consider "passing a resolution declaring COVID-19 misinformation a public health crisis." ECF No. 17 at 3, ¶¶ 13, 16. During the meeting, a dispute broke out between meeting attendees and the defendants. *Id.* at ¶ 14. A Clark County Commissioner attempted to restore order to the hearing but was not successful, so the Commissioner ordered that the chambers to be cleared. *See* Elando Johnson dep., Def.'s Ex. F, ECF No. 61 at 35–36.[2] In his complaint, Miller alleged that when he was exiting chambers, he observed a security guard shoving a female attendee, and when Miller asked the individual to identify himself, he was "rushed, shoved and attacked" by Solorio, Morris, and other Preventive Measures security guards. ECF No. 17 at ¶¶ 17–18. That guard was later identified as Clark County Security Guard (Cooperman), and Miller yelled and cursed at Cooperman. Meredith dep., Pl.'s Ex. 6, ECF No. 69 at 141;[3] Millers dep., Pl.'s Ex. 1, ECF No. 69 at 18. Miller was then escorted out of chambers. Pl.'s Ex. 6, ECF No. 69 at 141.

     Miller alleges that when he was being physically lifted by Solorio, Morris, and other Preventive Measures guards, his back was shoved through the commission chambers double doors, through the hallway, and then ultimately through a metal detector that was in the hallway of the Commission chambers. *Id.* at ¶ 19. Miller alleges that he fell backwards into

---

[1] Unless otherwise noted, the court only cites to the plaintiff's amended complaint (ECF No. 17) to provide context to this action, not to indicate a finding of fact.

[2] Clark County's motion violates Local Rule IC 2-2(3), which requires exhibits and attachments "be attached as separate files," not as part of the base document. Given the age of this case and the need for judicial efficiency, the court does not strike the filings under Local Rule IA 10-1(d). However, Clark County is cautioned that future violations of the rules may result in the court striking inappropriately filed documents or exhibits. Adherence to the rules assists the court in resolving motions more expeditiously.

[3] Both of Miller's responses to the summary judgment motions also violate Local Rule IC 2-2(3), which requires exhibits and attachments "be attached as separate files," not as part of the base document. The same admonishment applies—future violations of the rules may result in the court striking inappropriately filed documents or exhibits.

someone, and at some point, Solorio, Morris, and other Preventive Measures security guards knocked the metal detector into Miller's head which caused him to lose consciousness and hit the back of his head on the floor. *Id.* at ¶ 22.

The defendants contend that Miller was agitated and was acting "highly aggressive" in both behavior and language. Sutton dep., Defs.' Ex. B, ECF No. 65 at 10; Def.'s Ex. J, ECF No. 61 at 77. Despite being ordered to leave, Miller did not comply; rather, he allegedly shoved Preventive Measures Operation Manager, David Sutton. Def.'s Ex. J, ECF No. 61 at 72. Sutton radioed for assistance in removing Miller and Officer Solorio grabbed Miller to take him outside. *Id.*

Miller was carried out of chambers by Preventive Measures security guards through the subject metal detector, causing the metal detector to tip. Video, Def.'s Ex. D, ECF No. 61 at 00:36–0:39; Video, Def.'s Ex. C, ECF No. 61 at 00:00–0:03.[4] However, Miller never appears to hit his head on the metal detector or floor, nor does he appear to trip over anyone. Def.'s Ex. C, ECF No. 61 at 00:00–0:05; Def.'s Ex. D, ECF No. 61 at 00:35–0:42. Prior to the metal detector tipping over, Clark County Officer Johnson can be seen removing a red board to clear the path for Miller to go through. *See* Def.'s Ex. C, ECF No. 61 at 00:00–0:06; Def.'s Ex. D, ECF No. 61 at 00:35–0:40. That same officer caught the metal detector as it was tipping and prevented it from falling on the floor and on Miller. *See* Def.'s Ex. C, ECF No. 61 at 00:00–0:06; Def.'s Ex. D, ECF No. 61 at 00:35–0:45. Thereafter, Miller is slowly placed on the ground after going past the metal detector. *See* Def.'s Ex. C, ECF No. 61 at 00:05–0:10; Def.'s Ex. D, ECF No. 61 at 00:39–0:44.[5]

---

[4] When being carried through the metal detector, Miller is jumping and not cooperating. *See* Def.'s Ex. D, ECF No. 61 at 00:36–0:39; Def.'s Ex. C, ECF No. 61 at 00:00–0:03. Also shown in the video were Clark County security officers (in a tan uniform) and Preventive Measures security guards (in blue with the word "SECURITY" on their uniform).

[5] Miller could not recall if his head hit the metal detector nor if his head hit the floor when he was being escorted out. Pl.'s Ex. 5, ECF No. 69 at 141; Pl.'s Ex. 1, ECF No. 69 at 19.

B.  Undisputed facts

There is no dispute that the incident occurred on September 21, 2021, during a Clark County Commission meeting at the Government Center. ECF No. 69 at 6; ECF No. 64 at 6. Preventive Measures was a private security company contracted by Clark County to provide security services at various county locations. ECF No. 69 at 5; ECF No. 64 at 6. Preventive Measures' guards were required to maintain order, patrol premises, handle disruptions, and ensure safety, with specific protocols for uniforms, training, and incident reporting. *Id.* Preventive Measures' guards were armed, unlike Clark County employees who were unarmed, and Preventive Measures was hired to serve as a deterrent to potential crime and violence. *Id.*

II.    Legal standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmovant, indicates "no genuine dispute as to any material fact" and that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit" based on the governing law, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "mere disagreement or the bald assertion that a genuine issue of material fact exists" is not enough to defeat summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

Because the plaintiff bears the burden of proof at trial, a moving defendant need only point to an absence of evidence on an element of the plaintiff's case. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250–51. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The

nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

### III.    Discussion

On July 30, 2025, Clark County move for summary judgment on Miller's second, fifth, sixth, and seventh claims. *See generally* ECF No. 61. On August 20, 2025, the court entered an order granting Clark County's motion for judgment on the pleadings as to claims one through five and seven. ECF No. 68. The court also dismissed the unidentified and unnamed DOE defendants. *Id.* That same day, Miller filed a response stating that the "only viable claim against Defendant Clark County is its negligence/premises liability claim," ECF No. 70 at 4, so I only address Clark County's argument for summary judgment as to the sixth claim.

Preventive Measures, Solorio, and Morris move for partial summary judgment on Miller's 42 U.S.C. § 1983 claims for alleged violations of the Fourth and Fourteenth Amendments, as well as the parallel claims under article I, section 18 of the Nevada constitution, asserting that they cannot be liable under 42 U.S.C. § 1983 because they are not state actors, and no constitutional violation occurred. ECF No. 64. In opposition, Miller argues that the defendants qualify as state actors under § 1983, and their conduct was excessive and unconstitutional. ECF No. 69. I first address Clark County's motion as to Miller's sixth claim.

### A.  Clark County's summary judgment (ECF No. 61) is granted.

In Miller's complaint, he alleges that Clark County had a duty to ensure that the subject metal detector was properly anchored to the ground to prevent it from toppling over in the manner it did after officers and security guards "violently tackled" Miller through the subject metal detector. ECF No. 17 at 11, ¶ 71.

Clark County moves for summary judgment, arguing that it had no actual notice of a hazard with the subject metal detector. ECF No. 61 at 20. Clark County further argues that while Miller's complaint claims that it had a duty to ensure the subject metal detector was

properly anchored on the ground, there is no such duty for a political subdivision of the State of Nevada. *See id.* (citing NRS 41.033).

In opposition, Miller does not address the notice requirement; instead he argues that NRS 41.031 prohibits Clark County from claiming sovereign immunity concerning civil liability unless an exception to the general waiver of liability applies. ECF No. 70 at 3. To support this argument, Miller asserts that his theory of liability is "based upon the fact that the subject metal detector was not anchored to the floor, thereby creating the tipping hazard." *Id.* at 4. In reply, Clark County argues that Miller is attempting to circumvent NRS 41.033's actual notice requirement by claiming that Clark County created the tipping hazard, and Miller's argument conflates the duties owed by private landowners to entrants on their property with those owed by the State of Nevada and its political subdivisions. ECF No. 71 at 5. I agree.

The State of Nevada has generally waived its immunity for state tort claims in state court under Nevada Revised Statute (NRS) 41.031. Although NRS 41.031 waives sovereign immunity for state tort claims brought in state court, with respect to federal court cases, Nevada does not waive its sovereign immunity. *See* NRS 41.031(3); *see also O'Connor v. Nevada*, 686 F.2d 749, 750 (9th Cir. 1982) ("Nevada has explicitly refused to waive its immunity to suit under the eleventh amendment. The Supreme Court has made it clear that section 1983 does not constitute an abrogation of the eleventh amendment immunity of the states." (citation omitted)). NRS 41.033 specifically provides:

> No action may be brought under NRS 41.031 or against an officer or employee of the State or any of its agencies or political subdivisions which is based upon: (a) Failure to inspect any building, **structure**, vehicle, street, public highway or other public work, facility or improvement to determine any hazards, deficiencies or other matters, whether or not there is a duty to inspect; or (b) **Failure to discover such a hazard, deficiency or other matter**, whether or not an inspection is made.

NRS 41.033(1) (emphasis added).

NRS 41.033, however, "does not provide immunity to the public entity if that entity fails to take reasonable action once it gains express knowledge of the hazard." *Chastain v. Clark Cnty. Sch. Dist.*, 866 P.2d 286, 288 (Nev. 1993). Miller's complaint alleges that Clark County had a duty to ensure that the subject metal detector was properly anchored to prevent it from toppling over. ECF No. 17 at 11. And in his opposition to the summary judgment motion, Miller argues that Clark County created this hazard "by failing to properly anchor the subject metal detector to the floor." ECF No. 70 at 4. Thus, he contends his theory of liability does not arise out of notice; rather, it is grounded in that Clark County created the metal detector hazard.

Immunity under NRS 41.033(1) "will not bar actions based upon a public entity's failure to act reasonably when it has express knowledge of a hazard." *Ridgway v. Sun Valley Gen. Improvement Dist.*, 2015 U.S. Dist. LEXIS 155912, at *4 (D. Nev. Nov. 18, 2015) (citing *Nardozzi v. Clark Cnty. Sch. Dist.*, 823 P.2d 285, 287 (Nev. 1992)). But fatal to Miller's argument is the lack of evidence and points and authorities to support his position. Indeed, Miller fails to cite any evidence showing a genuine issue of material fact as to whether Clark County had expressed any knowledge of the alleged metal detector hazard prior to the plaintiff's injury. For the purposes of determining immunity, the issue is whether the defendant knew that the subject metal detector was a hazard—not whether the defendant created the hazard. Stated otherwise, Miller must show that Clark County *knew* the metal detector was a hazard and then failed to act. Miller fails to meet his burden. The record is devoid of any evidence showing Clark County (1) knew the unsecured metal detector was a hazard or (2) knew of any similar event related to the subject metal detector that would have placed Clark County on notice. On the other hand, Clark County provides evidence showing that it did not have knowledge that the detector needed to be anchored down, there had never been a prior incident where the detector had tipped, or any other information that would constitute notice. *See* Cooperman decl., Def.'s Ex. K, ECF No. 61 at 105–106; Cooperman dep., Def.'s Ex. L, ECF No. 61 at 111–117. As such, Clark County is immune. Consequently, I grant Clark County's motion for summary judgment on Miller's sixth claim.

**B.  Preventive Measures' partial summary judgment (ECF No. 64) is granted.**

Preventive Measures moves for summary judgment on Miller's claims under 42 U.S.C. §
1983 alleging violations of the Fourth and Fourteenth Amendments, and article 1, section 18 of
the Nevada constitution. *See* ECF No. 64. Preventive Measures argues that the defendants: were
not acting under color of state law, are immune from liability under § 1983, and lack the requisite
state action to trigger federal constitutional protections. *Id.*  They further assert that even if
liability did attach, the officers' actions during the September 21, 2021, incident were
"objectively reasonable, involving minimal and proportionate force to ensure public safety and
compliance with evacuation directives without rising to the level of excessive force or an
unlawful seizure." *Id.* at 3. Thus, Preventive Measures contends that they are entitled to
summary judgment.

In opposition, Miller argues that Solorio and Morris are state actors under 42 U.S.C.
§ 1983, and that their conduct was excessive and unconstitutional. *See* ECF No. 69. Miller argues
that when the state integrates private actors into the performance of its essential functions, the
acts of those private parties are attributable to the state. *Id.* at 9. Miller further argues that
maintaining order at an official government meeting is arguably a core government function,
especially in a public space such as the Commission chamber during a County Commissioners'
meeting open to the public. *Id.* In terms of the government nexus test, Miller argues that the
relationship between the County and the defendants was not incidental but integral. *Id.* At the
heart of Miller's argument is that "by authorizing and relying on private security to police
expressive activity within that forum, the County entwined itself with [d]efendants Solorio's
and Morris' challenged conduct." *Id.* Miller asserts that Solorio and Morris were not authorized
to use physical force. *Id.* at 10. He further asserts that the report issued by his expert creates a
genuine issue of material fact as to whether the force used by Solorio and Morris was excessive,
so summary judgment is inappropriate. *Id.*

"When determining whether a private party acted under color of law, a court starts with the presumption that private conduct **does not** constitute state action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) (emphasis added). But action by private entities may be state action, if there is significant state involvement. *Howerton v. Gabica*, 708 F.2d 380, 382 (9th Cir. 1983). Indeed, "[s]tate action may be found if . . . there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir. 2008) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). To find state action, a two-part test must be satisfied. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936–37 (1982). Part one of the test determines if the claimed constitutional deprivation resulted from the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible. *Lugar*, 457 U.S. at 939. Part two of the test determines whether the party charged with the deprivation could be described in all fairness as a state actor. *Id.* Both parts of test must be met to find state action. *See Collins v. Womancare*, 878 F.2d 1145, 1151 (9th Cir. 1989).

*Lugar* and its progeny have established at least four ways to identify if a private actor's conduct qualifies as state action for the purposes of § 1983: (1) the private actor performs a public function (the public-function test), (2) the private actor engages in joint activity with a state actor (the joint action test), (3) the private actor is subject to governmental compulsion or coercion (the state compulsion test), or (4) there is a governmental nexus with the private actor (the government nexus test). *See Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). The public function and government nexus test are relevant here.[6]

---

[6] Because Miller seemingly agrees that the state compulsion and joint action tests do not apply to the facts of this case, they are not addressed herein. *See* ECF No. ECF No. 69 at 9 (stating that "the state compulsion test and joint action test likely do not apply").

"Under the public[-]function test, when private individuals or groups are endowed by the [s]tate with powers or functions governmental in nature, they become agencies or instrumentalities of the [s]tate and [are] subject to its constitutional limitations." *Id.* at 1093 (quoting *Lee v. Katz*, 276 F.3d 550, 553–54 (9th Cir. 2002)). The public-function test is satisfied only upon a showing that the function at issue is "both traditionally and exclusively governmental." *Id.*

The government nexus test may be satisfied where the court finds a sufficiently close nexus between the state and private actor "so that the action of the latter may be fairly treated as that of the State itself, or where the State has so far insinuated into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *See Flournoy v. Walmart Stores, Inc.*, 2023 U.S. Dist. LEXIS 173356, at *3 (N.D. Cal. Sep. 27, 2023) (citing *Rawson v. Recovery Innovations*, 975 F.3d 742, 748 (9th Cir. 2020)).

Miller contends that there are "still questions of fact that preclude summary judgment concerning whether Defendants Solorio and Morris were acting as state actors under the public function and government nexus tests" so summary judgment is precluded. ECF No. 69 at 9. But Miller's mere argument fails. First, Miller summarily contends that Solorio and Morris are state actors because they maintained order (policed "expressive conduct") at an official government meeting which is a core government function. But Miller fails to cite any authority or evidence to support his assertion. While Solorio and Morris were hired as security guards through Preventive Measures for the county, the contract between Clark County and Preventive Measures states that a "successful bidder shall act as an independent successful bidder and **not as the agent of the county** in performing the contract." Defs.' Ex. A, ECF No. 64 at 34.[7] Further, the scope of work involved in the bid for Preventive Measures contract stated:

---

[7] The defendants' motion also violates Local Rule IC 2-2(3), which requires exhibits and attachments "be attached as separate files," not as part of the base document. They are also cautioned that future violations of the rules may result in the court striking inappropriately filed documents or exhibits.

Security Officers shall assist in emergency situations and be able to identify conflict and intervene expeditiously and courteously. Security Officers are a visual deterrent to possible problems at County facilities. The degree of response can be described as "mild confrontation". The Security Officer's actions in breaking up a physical disturbance are limited to a visual and vocal presence. Security officers are not to become embroiled in any altercation that cannot be quelled by their presence or words. If those efforts fail, **then the police are to be notified**. Security Officers are responsible for efficient performance of their duties under normal and emergency conditions.

ECF No. 64 at 39. Miller failed to address the bid and the contract and their role in this court's determination if the Solorio and Morris were state actors or not. This absence is critical given the contract establishes a line between what the defendants were permitted to do, and when police (i.e. state actors) must be notified to get involved. While the contract and bid are not dispositive in my analysis, Miller's failure to provide evidence showing that Preventive Measures' duties under its contract was "both traditionally and **exclusively** governmental" is fatal.

A motion for summary judgment is not defeated by solely relying on conclusory allegations unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Yet that is precisely what Miller attempts to do here, but this is insufficient. So I find Solorio and Morris are not state actors, especially given a collection of persuasive authority that states otherwise. *See King v. Ashley*, 2014 WL 3689582, at *2 (E.D. Cal. July 23, 2014) (explaining actions of private security guards generally do not constitute state action under § 1983); *Sheets v. Woelk*, 2026 U.S. Dist. LEXIS 2916, at *6 (M.D. Fla. Jan. 8, 2026) (explaining because private parties commonly perform security services, **even on government property**, the private party's alleged work cannot transform him into a state official) (emphasis added); *Hughes v. AT&T*, 2019 U.S. Dist. LEXIS 222061, at *3 n.33 (D. Alaska Dec. 5, 2019) (collecting cases holding that a private security guard is not a state actor under § 1983).

11

While this case is a closer call than others because of the underlying circumstances, the evidence shows that the nature of Preventive Measures job was not to serve as a Clark County peace officer. Under the contract, Preventive Measures' security guards were required to maintain order, patrol premises, handle disruptions, and ensure safety, with specific protocols for uniforms, training, and incident reporting. ECF No. 69 at 5; ECF No. 64 at 6. Though Preventive Measures hired the security guards to serve as a deterrent to potential crime and violence, they were not police officers. *Id.* Miller argues that the defendants' "authority to remove attendees, restrict speech, and enforce rules of decorum was not self-derived, but was delegated directly by the County." ECF No. 69 at 9. He further argues that Solorio and Morris's conduct was carried out according to government directives. *Id.* But Miller fails to cite any evidence indicating that the nature of the relationship between the defendants and Clark County was akin to giving Solorio and Morris police powers authority. *Compare Johnson v. LaRabida Children's Hosp.*, 372 F.3d 894, 896–97 (7th Cir. 2004) (holding that a security guard that could patrol and eject unruly persons from a hospital, but who could not carry a weapon and had to call the police when individuals became belligerent was not a state actor), *and Rabieh v. Paragon Sys.*, 316 F. Supp. 3d 1103, 1111 (N.D. Cal. 2018) (granting a motion to dismiss without prejudice where a plaintiff failed to set forth the scope of power given to security guards hired to protect government offices), *with Romanski v. Detroit Ent., L.L.C.*, 428 F.3d 629, 637 (6th Cir. 2005) (holding that private security guards who are endowed by law with plenary police powers such that they are de facto police officers may qualify as state actors under the public function test), *and Griffin v. Maryland*, 378 U.S. 130  (1964) (holding that an amusement park employee who was a deputized sheriff of the County, wore a Sheriff's uniform and badge, and violated park visitors for criminal trespassing, was a state actor).

The record shows that the Preventive Measures' officers were not conferred plenary police authority, and Miller fails to cite evidence supporting his contention that the scope of their power transformed them into state actors. The evidence cited by the county on the other

hand supports that the scope of the security officers' duties was narrow. First, Preventive Measures—not the county—was responsible for training its own security guards. Defs.' Ex. B, ECF No. 72 at 30, 35. Second, a Clark County manager testified during her deposition that there was a no use-of-force policy for security personnel, and Preventive Measures would have received this policy. Def.'s Ex. N, ECF No. 61 at 160–61. That same manager explained that private vendors had their supervisors and on-site leads that would give direction, *id.* at 156, and that private security guards were not allowed to use physical force under Clark County policies; rather, they were supposed to observe and then report it to her, or depending on the severity of the situation, call 911. *Id.* at 161. Miller argues that "the guard depended on the state for authority, guidance, and legitimacy." ECF No. 69 at 9. Again, Miller fails to cite any authority to support that, even if true, this converts the Preventive Measures offices into state actors. *See Holmes v. Dillard's Dep't Store*, 2024 WL 1298029, at *1 (S.D. Ga. Feb. 20, 2024) (explaining the fact that private parties call police does not transform into state actors).

Even if there was some guidance provided by Clark County to the security officers through this safety procedures (Pl.'s Ex. 2, ECF No. 69 at 22), Miller simply fails to establish with admissible evidence that the security officers were state actors. The video evidence however shows Solorio and Morris were not being directed by the Clark County officials when they decided to carry Miller out of chambers. *See generally* Video files, Def.'s Exs. C–D, ECF No. 63 (filed manually). In other words, the video shows that the defendants acted upon their own security training, which was extensively provided to them by Preventive Measures, not Clark County. *See* Sutton dep., Defs.' Ex. B, ECF No. 72 at 30–31, 35. Because Miller fails to create a genuine issue of material fact as to his first cause of action asserting Fourth and Fourteenth Amendment violations, I grant summary judgment in favor of Preventive Measures, Solorio, and Morris on Miller's first cause of action.[8]

---

[8] Because I find that Miller failed to create a genuine issue a material fact to support his position that the defendants were not state actors, I do not address the merits of the defendants' and Miller's arguments as to the reasonableness of the seizure and force.

13

Finally, Miller asserts in his fifth claim that Solorio and Morris violated his constitutional guarantees under article I, section 18 of the Nevada constitution, requiring him to be "free from unreasonable seizures or excessive force." *See* ECF No. 17 at 10, ¶ 64. The defendants argue that they are entitled to summary judgment on this claim because "the objective reasonableness standard under article 1, section 18, aligns with the Fourth Amendment analysis for excessive force and unreasonable seizure claims, and because Defendants' actions were objectively reasonable under the totality of the circumstances, no violation of Plaintiff's Nevada constitutional rights occurred." *See* ECF No. 64 at 12.[9]

As a threshold matter, I sua sponte find that the defendants are not subject to violations under article 1, section 18 of the Nevada constitution because, for the reasons set forth above, the defendants were not state actors under the Fourth and Fourteenth Amendment of the Constitution. *See Jones v. L.A. Cent. Plaza LLC,* 74 F.4th 1053, 1058–59 (9th Cir. 2023) (explaining that the court may grant a summary judgment motion on grounds not raised by a party). So the defendants are entitled to summary judgment on this fifth claim.

## IV.      Conclusion

IT IS ORDERED that Clark County's motion for summary judgment [ECF No. 61] is **GRANTED as set forth in this order**. Therefore, Clark County is dismissed.

IT IS FURTHER ORDERED that the defendants' motion for partial summary judgment **[ECF No. 64] is GRANTED.**

Dated: February 25, 2026

_____
Cristina D. Silva
United States District Judge

---

[9] Miller does not address the defendants' fifth cause of action arguments in his opposition. *See generally* ECF No. 69.

14